## Buis v. Commonwealth.

(Decided May 13, 1927.)

### Appeal from Casey Circuit Court.

1. Homicide.—Evidence in murder trial held to warrant finding that defendant was in no danger from deceased at time of killing.
2. Criminal Law.—Leading questions and immaterial evidence elicited in murder trial held not reversible error, in absence of anything in record prejudicing defendant's substantial rights, as required by Criminal Code of Practice, sections 340, 353, to authorize reversal.

C. C. BAGBY, ELI WESLEY and CHARLIE FAIR (RANSOM BRYANT, of counsel), for appellant.

FRANK E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

On July 31, 1925, Oscar Buis killed Virgil Brown. Under an indictment charging him with murder, he was found guilty of manslaughter and his punishment fixed at confinement in the penitentiary for five years, from which judgment he prosecutes this appeal. It seems that Brown and Buis had formerly been friends and had been engaged in the illegal liquor traffic, and that both of them had served several jail sentences for violating our liquor statutes. Buis became surety upon some sort of bond

for Brown, and when Brown ran away to Cincinnati, Buis had him brought back. From that time on the feeling between the two seems to have been very unfriendly. They made many threats of doing violence to each other, some of which were perhaps made in a spirit of braggadocio, but others have the appearance of having been made in earnest. It appears that recently Brown had changed his attitude toward the liquor traffic, and about a week before the killing he had caused a search warrant to be issued under which the premises of the mother of Buis were searched, and Brown was a member of that searching party. This further aggravated the bad feeling that Buis had for Brown.

On the morning of the killing, Brown had started afoot to Mt. Olive. Shortly thereafter Buis started in an automobile in the same direction. In this automobile with him Buis had his little son, about five years old, and his brother, Howard Buis. The encounter in which Brown lost his life took place on this road about 75 yards from a house in which Elmer Brown lived. Buis admits the killing, but claims he did it in his necessary self-defense, and that Brown waylaid him on this road and began the difficulty by shooting at Buis as he passed. Witnesses for the commonwealth put this ambuscade in question, and one witness says that shortly before he heard the shooting he saw Brown walking down the road and this automobile rapidly overtaking him. None of the witnesses who testified saw the shooting, except the defendant himself and his brother Howard.

There was evidence that the pistol Brown had on that occasion had not recently been fired. One witness who reached the scene of the killing shortly after the difficulty said Buis showed him a pistol and told him it was Brown's pistol, and at that time the cylinder of this pistol had been swung out and was entirely empty. This pistol, when turned over to the officers, had in it five empty shells and one shell that had been snapped. Buis had had this pistol of Brown's in his possession for an hour or two before it was turned over to the officers, and, while he says that he turned it over to the officers in the same condition in which it was when he picked it up, there was evidence that the shells that were in that pistol when it was turned over had not been fired by that pistol. These shells that were in this Brown pistol when it was turned over to the officers were struck on the edge of the

cap. The pistol that Buis turned over to the officers as the one with which he killed Brown was examined, and it was shown that owing to the peculiar form of the mechanism, when it was fired the cap of the cartridge was struck on the edge. On the former trial, the court had an officer fire these pistols, and, when that was done, the shells were examined and they showed that the Buis pistol struck the cap on the edge, while the Brown pistol struck the cap in the center, thus supporting the theory of the commonwealth that the Brown pistol was not fired at the time of the killing, and that the shells that were in it when it was turned over to the officers had been taken from the Buis pistol and put in there.

According to both Oscar Buis and his brother Howard, Brown shot at the defendant six times, and, according to Howard, three or four seconds after Brown stopped shooting, Oscar Buis fired the shots that killed Brown. Thus there was evidence from both the commonwealth and the defendant from which the jury might have concluded that Brown was killed by Buis at a time when Buis was in no danger. There is no complaint of the instructions, and the only question Buis is raising here is directed to the action of the court in receiving and rejecting evidence. Although the only witnesses introduced who saw this difficulty were the defendant and his brother, yet 71 witnesses were examined and many of these were recalled several times. This testimony makes up four large volumes, two of which are larger than are allowed by the rules of this court. Many leading questions were asked. In fact, some of them were so drawn that it might be said that not only did they lead the witness, but, if we may use the expression, they dragged him. However, there is no instance where, as the fruit of such a question, any evidence was elicited that amounted to anything. No evidential matter thus obtained was of such a character that it can be said to have in any way affected the verdict. It is apparent to any one that when this much evidence is heard about a killing which but two persons saw, a great deal of it must be immaterial, and we find a great deal of such evidence in this record, but there is very little of such to which the defendant objected. If such a mass of evidence had been taken without any error of any kind being made, it would be indeed remarkable; but not every error is reversible error. To authorize a reversal, it must appear upon con-

sideration of the whole case that the substantial rights of the defendant have been prejudiced. See sections 340 and 353, Criminal Code. There is nothing in this record that measures up to that requirement.

Therefore the judgment is affirmed.